# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

JOSEPH BARRETT and MATTHEW     :
SILVERMAN, on behalf of himself and   :    CIVIL ACTION FILE NO.
others similarly situated,             :
                                          :
      Plaintiffs,                  :
                                          :    **COMPLAINT – CLASS ACTION**
v.                                         :
                                          :
CARGUARD ADMINISTRATION, INC.,   :    **JURY TRIAL DEMANDED**
VEHICLE PROTECTION SPECIALISTS    :
LLC and AUTO PROTECHT LLC        :
                                          :
      Defendants.             :
_____/

Plaintiffs Joseph Barrett ("Mr. Barrett") and Matthew Silverman ("Mr. Silverman") (hereinafter referred to as "Plaintiffs"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

## NATURE OF ACTION

1.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC Chairman).

2.     "The FTC receives more complaints about unwanted calls than all other complaints combined." Comment of the Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the TCPA of 1991, Notice of Proposed Rulemaking*, CG Docket No. 02-278, at p. 2; FCC 16-57 (June 6, 2016), *available at*

https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf.

3.      This case involves a campaign by Vehicle Protection Specialists LLC ("Vehicle Protection") and Auto Protecht LLC ("Auto Protecht"), telemarketers retained by CarGuard Administration, Inc. ("CarGuard") to market CarGuard's services through the use of automated telemarketing calls in plain violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (hereinafter referred to as the "TCPA").

4.      Moreover, Auto Protecht and Vehicle Protection sent multiple calls to residential telephone numbers that are registered on the National Do Not Call List (hereafter "NDNC"), which is a separate and additional violation of the TCPA. The recipients of these illegal calls, which include Plaintiff and the proposed classes, are entitled to damages under the TCPA.

## **PARTIES**

5.      Plaintiff Joseph Barrett and Matthew Silverman, at all times mentioned herein was, were individual citizens of Massachusetts.

6.      Defendant Carguard Administrations, Inc. is a Kansas corporation. Carguard is registered to do business in the Commonwealth of Massachusetts and has a registered agent of Incorp. Services, Inc., 44 School St., Suite 505, Boston, MA 02018.

7.      Defendant Vehicle Protection Specialists LLC is a Nevada limited liability company with its principal place of business in Irvine, CA 92618. Vehicle Protection is registered to do business in the Commonwealth of Massachusetts and has a registered agent of Business Filings Incorporated, 155 Federal St., Suite 700 in Boston, MA 02110.

8.      Defendant Auto Protecht LLC is a California limited liability company with its principal place of business in Orange, CA and a registered agent of Home Kim, 12881 Knott St., Suite 226 in Garden Grove, CA 92841.

## JURISDICTION AND VENUE

9.      The Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("hereinafter referred to as CAFA") codified as 28 U.S.C. 1332(d)(2).  The matter in controversy exceeds $5,000,000, in the aggregate, exclusive of interest and costs, as each member of the proposed Class of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA.  Further, Plaintiffs allege a national class, which will result in at least one Class member from a different state.

10.     This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

11.     This Court has personal specific jurisdiction over Carguard because it services the contracts offered on the calls by Auto Protecht and Vehicle Protection, including on the calls to the Plaintiff. Furthermore, CarGuard sent the Plaintiff Silverman a Carguard contract following calls by Auto Protecht

12.     Auto Protecht and Vehicle Protection are subject to specific personal jurisdiction because the companies made telemarketing calls to the Plaintiffs by directing their conduct into this District.

13.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiffs were residents of this District at all material times hereto.

**TCPA BACKGROUND**

Calls Made Using an "Automated Telephone Dialing System"

14.     The TCPA regulates, among other things, the use of a pre-recorded message or an automated telephone dialing system ("ATDS") to make calls or send automated calls.  *See* 47 U.S.C. § 227, *et seq.*; *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

15.     Specifically, the TCPA prohibits the use of an automated telephone dialing system to make any telemarketing call or send any telemarketing text message to a wireless number in the absence of an emergency or the prior express written consent of the called party. *See* 47 U.S.C.  § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(2); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1831 (F.C.C. 2012).

16.     The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." § 227(a)(1)(A)-(B).  The first component of this definition is satisfied when a dialing system has the capacity to call "a given set of numbers" or when "dialing equipment is paired with . . . a database of numbers."  *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14,014, ¶ 133 (2003); *see In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 566 (F.C.C. 2008) (rejecting argument that a dialing system "meets the definition of autodialer only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists" and

reasoning that "the teleservices industry had progressed to the point where dialing lists of numbers was far more cost effective"); *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1051 (9th Cir. 2018) (holding that "equipment that made automatic calls from lists of recipients was . . . covered by the TCPA").

17.     "[T]elemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person."  47 C.F.R. § 64.1200(f)(12).

18.     "[P]rior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."  47 C.F.R. § 64.1200(f)(8).

The National Do Not Call Registry

19.     Second, § 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

20.     In this rulemaking proceeding, the FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific 'do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

21.     Pursuant to this statutory mandate, the FCC issued two regulations, only one of which is relevant here.

22.     The relevant regulation under § 227(c) established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

23.     The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id.* at 8765, ¶ 23.

24.     However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

25.     A violation of § 227(c) through 47 C.F.R. § 64.1200(d) carries statutory damages of $500 to $1,500 per call.

26.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

27.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

28.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of

action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## **FACTUAL ALLEGATIONS**

29.    Defendant CarGuard is a "person" as the term is defined by 47 U.S.C. § 153(39).

30.    Defendant Auto Protecht is a "person" as the term is defined by 47 U.S.C. § 153(39).

31.    Defendant Vehicle Protection is a "person" as the term is defined by 47 U.S.C. § 153(39).

32.    At no point have the Plaintiffs sought out or solicited information regarding Defendant CarGuard's services prior to receiving the automated calls at issue.

Calls to Plaintiff Barrett

33.    Plaintiff Barrett's telephone number, 781-XXX-3511, is registered to a cellular telephone service.

34.    Plaintiff Barrett's telephone number is used for residential, non-commercial purposes.

35.    Plaintiff Barrett's telephone number was on the National Do Not Call Registry for more than 31 days prior to the receipt of the first call advertising CarGuard's goods or services.

36.    Plaintiff Barrett received several telemarketing calls promoting CarGuard's goods or services, including on March 4, 5 (at least twice) and March 6, 2020 (at least three times).

37.    When a call was answered, unlike on a normal call, no one promptly announced herself to Plaintiff. Instead, Plaintiff heard an unnatural click and pause.

38.     The pause signifies the algorithm of the predictive dialer operating.  The predictive dialer dials thousands of numbers at once, and only transfers the call to a live agent once a human being is on the line.

39.     The dialing system used also has the capacity to store telephone numbers in a database and dial them automatically with no human intervention.

40.     Loading a list of telephone numbers into the dialing system and pressing a single command does this.

41.     As a predictive dialer, the dialing system can also produce numbers using a sequential number generator and dial them automatically.

42.     The dialing system can do this by inputting a straightforward computer command.

43.     Following that command, the dialing system will sequentially dial numbers.

44.     First, it would dial a number such as (555) 000-0001, then (555) 000-0002, and so on.

45.     This would be done without any human intervention or further effort.

46.     The calls came from "spoofed" Caller ID numbers, including (781) 288-5176.

47.     As a result, the system that sent automated calls to Plaintiff Barrett qualifies as an ATDS pursuant to 47 U.S.C. 227(a)(1)(A).

48.     Eventually, the Plaintiff engaged the telemarketer to learn their identity.

49.     The call promoted CarGuard's services.

50.     The caller attempted to sell the Plaintiff CarGuard services.

51.     The caller "Edward Franklin" asked Mr. Barrett several questions about his vehicle and explicitly stated he was marketing for CarGuard.

52.     Mr. Barrett eventually received a "Purchase Confirmation" email from @vehicleprotectionspecialist.com, a domain associated with Vehicle Protection.

53.     The calls received by Plaintiff were sent for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services as it seeks to have him sign up for CarGuard's services.  This message therefore qualified as telemarketing.  47 C.F.R. § 64.1200(f)(12).

Calls to Plaintiff Silverman

54.     Plaintiff Silverman's telephone number, 609-XXX-5921, is registered to a cellular telephone service.

55.     Plaintiff Silverman's telephone number is used for residential, non-commercial purposes.

56.     Plaintiff Silverman received several telemarketing calls to promote CarGuard's goods or services from Vehicle Protection, including on January 21, 22 and January 30, 2020.

57.     When a call was answered, unlike on a normal call, no one promptly announced herself to Plaintiff. Instead, Plaintiff heard an unnatural click and pause.

58.     The pause signifies the algorithm of the predictive dialer operating.  The predictive dialer dials thousands of numbers at once, and only transfers the call to a live agent once a human being is on the line.

59.     The dialing system used also has the capacity to store telephone numbers in a database and dial them automatically with no human intervention.

60.     Loading a list of telephone numbers into the dialing system and pressing a single command does this.

61.     As a predictive dialer, the dialing system can also produce numbers using a sequential number generator and dial them automatically.

62.     The dialing system can do this by inputting a straightforward computer command.

63.     Following that command, the dialing system will sequentially dial numbers.

64.     First, it would dial a number such as (555) 000-0001, then (555) 000-0002, and so on.

65.     This would be done without any human intervention or further effort.

66.     As a result, the system that sent automated calls to Plaintiff Silverman qualifies as an ATDS pursuant to 47 U.S.C. 227(a)(1)(A).

67.     On the January 30, 2020 call, the Plaintiff engaged the telemarketer to learn their identity.

68.     The call promoted CarGuard's services.

69.     The caller attempted to sell the Plaintiff CarGuard services.

70.     The caller asked Mr. Silverman several questions about his vehicle and explicitly stated he was marketing for CarGuard.

71.     Mr. Silverman eventually received an email from @vehicleprotectionspecialist.com, a domain associated with Vehicle Protection.

72.     The calls received by Plaintiff were sent for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services as it seeks to have him sign up for CarGuard's services.  This message therefore qualified as telemarketing.  47 C.F.R. § 64.1200(f)(12).

73.     Plaintiff Silverman received several telemarketing calls to promote CarGuard's goods or services from Auto Protecht, including on February 17, 19 and 20, 2020.

74.     When a call was answered, unlike on a normal call, no one promptly announced herself to Plaintiff. Instead, Plaintiff heard an unnatural click and pause.

75.     The pause signifies the algorithm of the predictive dialer operating.  The predictive dialer dials thousands of numbers at once, and only transfers the call to a live agent once a human being is on the line.

76.     The dialing system used also has the capacity to store telephone numbers in a database and dial them automatically with no human intervention.

77.     Loading a list of telephone numbers into the dialing system and pressing a single command does this.

78.     As a predictive dialer, the dialing system can also produce numbers using a sequential number generator and dial them automatically.

79.     The dialing system can do this by inputting a straightforward computer command.

80.     Following that command, the dialing system will sequentially dial numbers.

81.     First, it would dial a number such as (555) 000-0001, then (555) 000-0002, and so on.

82.     This would be done without any human intervention or further effort.

83.     As a result, the system that sent automated calls to Plaintiff Silverman qualifies as an ATDS pursuant to 47 U.S.C. 227(a)(1)(A).

84.     On the February 20, 2020 call, the Plaintiff engaged the telemarketer to learn their identity.

85.     The call promoted CarGuard's services.

86.     The caller attempted to sell the Plaintiff CarGuard services.

87.     The Plaintiff received a credit card charge from Auto Protecht and a CarGuard policy.

88.     The calls received by Plaintiff were sent for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services as it seeks to have him sign up for CarGuard's services.  This message therefore qualified as telemarketing.  47 C.F.R. § 64.1200(f)(12).

89.     The calls were not necessitated by an emergency.

90.     Plaintiffs and all members of the Classes, defined below, have been harmed by the acts of Defendants because their privacy has been violated, they were annoyed and harassed, and, in some instances, they were charged for incoming calls.  Plaintiffs and the Class Members were also harmed by use of their cell phone battery and the intrusion on their cellular telephone that occupied it from receiving legitimate communications.

## CARGUARD'S LIABILITY FOR THE CALLS AT ISSUE

91.     For twenty-five years the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

92.     On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously

liable under federal common law principles of agency for violations of either section 227(b) or

section 227(c) that are committed by third-party telemarketers."[1]

93.     In that ruling, the FCC instructed that sellers such as CarGuard may not avoid

liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing
> activities to unsupervised third parties would leave consumers in many cases
> without an effective remedy for telemarketing intrusions. This would particularly
> be so if the telemarketers were judgment proof, unidentifiable, or located outside
> the United States, as is often the case. Even where third-party telemarketers are
> identifiable, solvent, and amenable to judgment limiting liability to the
> telemarketer that physically places the call would make enforcement in many
> cases substantially more expensive and less efficient, since consumers (or law
> enforcement agencies) would be required to sue each marketer separately in order
> to obtain effective relief. As the FTC noted, because "[s]ellers may have
> thousands of 'independent' marketers, suing one or a few of them is unlikely to
> make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

94.     The May 2013 FCC Ruling held that, even absent evidence of a formal

contractual relationship between the seller and the telemarketer, a seller is liable for

telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls.

28 FCC Rcd at 6586 (¶ 34).

95.     Vehicle Protection and Auto Protecht was contractually required to promote

CarGuard products on their telemarketing calls in order to potentially generate new customers,

and did so, as they did with the Plaintiffs.

96.     CarGuard knew that Vehicle Protection and Auto Protecht was making automated

telemarketing calls.

---

[1]     *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling
Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

97.     In fact, counsel for Mr. Silverman sent CarGuard and Vehicle Protection a letter regarding their conduct on February 7, 2020.

98.     Nonetheless, CarGuard continued its relationship with Vehicle Protection and Mr. Barrett received automated calls in March of 2020.

99.     Furthermore, Vehicle Protection has received complaints from the Better Business Bureau:

> Several phone calls a day are coming into my cell phone. I have asked repeatedly for them to STOP calling and to remove the number. They call asking for either an **** **** or a Miss ***** neither of which I am, at that point I ask them to remove the number and am told they will do so, apparently they do not. They are a company based in California and I am in NJ, all the calls come from a NJ area code. I was advised by a "supervisor" who claims she will also take care of it, that in fact the company is from California but the calls are then routed by location to show that same states area code.
>
> ***
>
> I have been receiving robo calls from the company that violate telemarketing laws.

*See* https://www.bbb.org/us/ca/irvine/profile/auto-warranty-plans/vehicle-protection-specialists-llc-1126-172014552/complaints#397797844 (Last Visited April 15, 2020).

100.    Even worse, CarGuard admits that it can't help the called consumer until the consumer finds out the name of the company CarGuard is working with:

> We do not engage in any marketing directly to consumers of any type. Unfortunately, without the identity of the seller there is no way for us to suspend calls. If the customer can let us know who the seller is, we can e-mail them and ask them to stop calling this customer. If the customer can provide us the name of seller, please e-mail it to *****************, and we will contact the seller and ask them to stop calling this customer.

*See* https://www.bbb.org/us/ks/leawood/profile/auto-service-contract-companies/carguard-administration-inc-0674-1000006173/customer-reviews (Last Visited April 15, 2020).

101.    CarGuard was knowingly and actively accepting the business that originated through the illegal telemarketing calls through the issuance of insurance policies.

102.    CarGuard derived a benefit from its interaction with the Plaintiff Barrett by the issuance of a policy quote.

103.    CarGuard derived a benefit from its interaction with the Plaintiff Silverman by the purchase of a policy.

104.    Moreover, CarGuard maintained interim control over Vehicle Protection and Auto Protecht's actions.

105.    For example, CarGuard had absolute control over whether, and under what circumstances, it would accept a customer.

106.    Furthermore, CarGuard had day-to-day control over Vehicle Protection and Auto Protecht's actions, including the ability to prohibit it from using automated methodology to contact potential customers of CarGuard.

107.    CarGuard failed to make such an instruction to Vehicle Protection and Auto Protecht, and as a result, is liable for Vehicle Protection and Auto Protecht's conduct.

108.    CarGuard also gave interim instructions to Vehicle Protection and Auto Protecht by providing the volume of calling and leads it would purchase.

109.    CarGuard gave further interim instructions to Vehicle Protection and Auto Protecht by providing the states that those companies were allowed to make calls into and restricting other states that they could not.

110.    CarGuard knew, or should have known, that Vehicle Protection and Auto Protecht was generating the leads through conduct that violated the TCPA.

111.    CarGuard has previously received complaints regarding the telemarketing conduct

of its third-party vendors.

112.    Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence

of these kinds of relationships . . . through discovery, if they are not independently privy to such

information." *Id.* at 6592-593 (¶ 46).  Evidence of circumstances pointing to apparent authority

on behalf of the telemarketer "should be sufficient to place upon the seller the burden of

demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was

acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## CLASS ACTION ALLEGATIONS

113.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if

fully stated herein.

114.    Plaintiffs bring this action on behalf of himself and the following classes (the

"Classes") pursuant to Federal Rule of Civil Procedure 23.

115.    Plaintiffs propose the following Class definitions, subject to amendment as

appropriate:

> **Auto Protecht Robodialing Class:** All persons in the United States who, within
> four years prior to the commencement of this litigation until the class is certified,
> received one or more calls on their cellular telephone from or on behalf of the
> Auto Protecht, sent via the same, or substantially similar, system used to contact
> the Plaintiff.

>> **Auto Protecht CarGuard Robodialing Subclass:** All persons in the
>> United States who, within four years prior to the commencement of this
>> litigation until the class is certified, received one or more calls on their
>> cellular telephone from or on behalf of the Auto Protecht that promoted
>> CarGuard services, sent via the same, or substantially similar, system used
>> to contact the Plaintiff.

**<u>Vehicle Protection Robodialing Class:</u>** All persons in the United States who, within four years prior to the commencement of this litigation until the class is certified, received one or more calls on their cellular telephone from or on behalf of the Vehicle Protection, sent via the same, or substantially similar, system used to contact the Plaintiff.

> **<u>Vehicle Protection CarGuard Robodialing Subclass:</u>** All persons in the United States who, within four years prior to the commencement of this litigation until the class is certified, received one or more calls on their cellular telephone from or on behalf of the Vehicle Protection that promoted CarGuard services, sent via the same, or substantially similar, system used to contact the Plaintiff.

**<u>Vehicle Protection National Do Not Call Registry Class</u>**: All persons in the United States whose telephone numbers were on the National Do Not Call Registry for at least 30 days, but who received more than one telephone solicitation telemarketing call from or on behalf of the Vehicle Protection with a 12-month period, from four years prior the filing of the Complaint.

> **<u>Vehicle Protection CarGuard National Do Not Call Registry Subclass:</u>** All persons in the United States whose telephone numbers were on the National Do Not Call Registry for at least 30 days, but who received more than one telephone solicitation telemarketing call from or on behalf of the Vehicle Protection that promoted CarGuard services, from four years prior the filing of the Complaint.

116.    Mr. Silverman is a member of and will fairly and adequately represent and protect the interests of these Classes as he has no interests that conflict with any of the class members.

117.    Mr. Barrett is a member of and will fairly and adequately represent and protect the interests of the Vehicle Protection classes as he has no interests that conflict with any of the class members.

118.    Excluded from the Classes are counsel, the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

119.     Plaintiffs and all members of the Classes have been harmed by the acts of the Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their cell phone battery, and the intrusion on their cellular telephone that occupied it from receiving legitimate communications.

120.     This Class Action Complaint seeks injunctive relief and money damages.

121.     The Classes as defined above are identifiable through dialer records, other phone records, and phone number databases.

122.     Plaintiffs do not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds in each class.

123.     The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

124.     Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

125.     There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions which may affect individual Class members.

126.     There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including but not limited to the following:

> (a)  whether an automatic telephone dialing system to send calls;
>
> (b)  Whether agents operating on behalf of Defendants utilized an automatic telephone dialing system in sending automated calls;
>
> (c)  whether multiple telemarketing telephone calls were made promoting the goods or services to members of the National Do Not Call Registry Classes;

    (d)  whether the telemarketing calls at issue were made to Plaintiffs and members of the Classes without first obtaining prior express written consent to make the calls;

    (e)  whether Defendants' conduct constitutes a violation of the TCPA; and

    (f)  whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

127.    Further, Plaintiffs will fairly and adequately represent and protect the interests of the Classes.  Plaintiffs have no interests which are antagonistic to any member of the Classes.

128.    Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the financial resources to do so.

129.    Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

130.    The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

## FIRST CAUSE OF ACTION
**Statutory Violations of the Telephone Consumer Protection Act
(47 U.S.C. 227, et seq.) on behalf of the Robocall Classes**

131.    Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

132.     The Defendants violated the TCPA by sending, or causing to be sent via an agent, automated calls to the cellular telephones of Plaintiff and members of the Robocall Class using an automated dialer without their prior express written consent.

133.     As a result of Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and Robocall Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

134.     The Plaintiffs and Robocall Class Members are entitled to an award of treble damages if their actions are found to have been knowing or willful.

135.     Plaintiffs and Robocall Class members are also entitled to and do seek injunctive relief prohibiting the Defendants from using an ATDS or pre-recorded voice in the future, except for emergency purposes.

## SECOND CAUSE OF ACTION
### Violation of the Telephone Consumer Protection Act
### (47 U.S.C. 227, et seq. and 47 C.F.R. §§ 64.1200(d))
### on behalf of the National Do Not Call Registry Classes

136.     Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

137.     Defendants violated the TCPA and the Regulations by making, or having its agent make, two or more telemarketing automated calls within a 12-month period on Defendants' behalf to Plaintiffs and the members of the National Do Not Call Registry Class while those persons' phone numbers were registered on the National Do Not Call Registry.

138.     As a result of Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and National Do Not Call Registry Class members are entitled to an award of up to $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

139.     Plaintiffs and Class Members are entitled to an award of treble damages if their actions are found to have been knowing or willful.

140.     Plaintiff and National Do Not Call Registry Class members are also entitled to and do seek injunctive relief prohibiting the Defendant from advertising their goods or services, except for emergency purposes, to any number on the National Do Not Call Registry in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, prays for the following relief:

A.     Injunctive relief prohibiting Defendants from calling telephone numbers advertising their goods or services, except for emergency purposes, to any number on the National Do Not Call Registry or to any cellular telephone numbers using a prerecorded voice in the future;

B.     As a result of Defendants' violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Robocall Class member up to treble damages, as provided by statute, of $1,500 for each and every violation of the TCPA;

C.     As a result of Defendants' willful and/or knowing violations of 47 C.F.R. § 64.1200(d), Plaintiffs seek for himself and each member of the National Do Not Call Registry

Class up to treble damages, as provided by statute, of up to $1,500 for each and every violation

of the TCPA;

D.      An order certifying this action to be a proper class action pursuant to Federal Rule

of Civil Procedure 23, establishing an appropriate Classes the Court deems appropriate, finding

that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms

representing Plaintiff as counsel for the Class;

E.      Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.


PLAINTIFFS,
By their attorneys

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

Alex M. Washkowitz
Jeremy Cohen
CW Law Group, P.C.
188 Oaks Road
Framingham, MA 01701
alex@cwlawgrouppc.com